## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**TAWANNA MACKINS**
    Plaintiff

**v.**                                                                                             **No. 5:08CV-00183-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on February 5, 2007, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II and Title XVI benefits, Judge Craig entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since April 6, 2005, the first date relevant to this decision (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; history of bilateral carpal tunnel syndrome, status-post surgeries; obesity, status-post gastric bypass surgery; depressive disorder; somatoform pain disorder; and dependent personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a range of light work activity. The claimant can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently. She can push/pull within these limitations with the uppers and lower extremities, but not on a repetitive basis. She can sit, stand and/or walk, about six hours each, as needed in an eight-hour workday. She can occasionally stoop and crouch, but never kneel or crawl. She can only occasionally use her right hand/wrist/upper extremity for reaching, handling, fingering and feeling. She can never be exposed to extreme cold, extreme heat, wetness and/or humidity, vibration, moving/mechanical parts, electrical shock, exposed heights and noxious fumes/odors. Regarding her mental impairment, she can never carry out detailed instructions or make complex decisions. She can no more than occasionally interact with the general public or co-workers. The claimant cannot perform fast-paced/quota-based types of jobs.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 22, 1970, and was 35 years old, which is defined as a younger individual age 18-44, on April 6, 2005 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, at any time relevant to this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 16-24).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the

4

so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Discussion

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The VE testified that an individual with the following limitations would retain the ability to perform a significant number of jobs in the national economy, including copy machine operator, surveillance system monitor, and order clerk (AR, p. 100):

5

> **ALJ to VE:** Consider an individual with the claimant's vocational profile limited to sedentary and light with no repetitive pushing or pulling in the upper or lower extremities, occasionally stoop and crouch, no kneeling or crawling, occasionally with the right hand reaching, fingering and feeling and handling occasionally, no restrictions with the left hand, no exposure to the weather, extreme heat or cold or wetness and humidity, no vibrating surfaces or objects, no exposure to moving mechanical parts, electrical shock or high places no noxious fumes and odors, no fast paced work, no sustained, detailed or complex work and could have occasional contact with co-workers and the general public.

The state agency program psychologists, Drs. Sillers and Hess, completed the standard mental assessment form, finding that the plaintiff has "moderate" limitations in the following functional areas: 1) ability to maintain attention and concentration for extended periods, 2) interact appropriately with the general public, 3) respond appropriately to changes in the work setting, and 4) set realistic goals or make plans independently of others (AR, pp. 296-297 and 344-345). In his written decision, the ALJ found that he "is fully persuaded by and accepts the opinions of Dr. Sillers and Dr. Hess, which are adopted herein" (AR, p. 23).

For the reasons indicated below, the magistrate judge concludes that the ALJ's acceptance of the opinions of the state agency program psychologists raises several issues which will require clarification by the Commissioner upon remand. First, the ALJ found that "[r]egarding her mental impairment, [the plaintiff] can never carry out detailed instructions or make complex decisions. She can no more than occasionally interact with the general public or co-workers. The claimant cannot perform fast-paced/quota-based types of jobs." Finding No. 5. These findings correspond to the limitations contemplated by the controlling vocational hypothetical. The magistrate judge concludes that the language and terminology utilized by the state agency program psychologists to identify the plaintiff's mental limitations do not correspond to the language of the controlling vocational hypothetical and the ALJ's Finding No. 5.

At the fifth and final step of the sequential evaluation process, the Commissioner carries a burden of going forward with evidence of non-disability. This burden is satisfied when the VE identifies a significant number of jobs in the national economy that the plaintiff could still perform. The undersigned is unable to correlate the findings of the state agency program psychologists with those contemplated by the controlling vocational hypothetical and Finding No. 5 so as to conclude that the Commissioner adequately carried his fifth-step burden, i.e., there is an inadequate evidentiary basis for concluding that the individual contemplated by the hypothetical and <u>also</u> having the limitations found by the program psychologists would retain the ability to perform a significant number of jobs in the national economy. Therefore, this matter should be remanded to the Commissioner for presentation of vocational hypotheticals that correspond in language and terminology to the ALJ's residual functional capacity (RFC) finding in his written decision sufficiently to permit a meaningful judicial review.

The second issue requiring clarification by the Commissioner in light of the ALJ's acceptance of the opinions of the state agency program psychologists may be stated as follows. As indicated above, these psychologists found, among other things, that the plaintiff has a moderate limitation with respect to her ability to maintain attention and concentration for extended periods. Upon cross-examination by counsel, the VE testified that, of the three jobs previously identified, an individual with the foregoing moderate limitation would be able to perform only the job of copy machine operator (AR, p. 103). The VE testified that there are 900 copy machine operator positions in the state of Kentucky and 60,000 in the national economy (AR, p. 101).

The foregoing testimony is problematic because, as indicated above, to satisfy the Commissioner's fifth-step burden, the VE was required to identify a "significant" number of jobs in the national economy that the plaintiff could still perform. For the reasons indicated below, it is not apparent that 900 jobs in the state of Kentucky and 60,000 in the national economy reflect a significant number.

"Work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet with [plaintiff's] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). In determining what constitutes a significant number of jobs, a reviewing court should apply a common sense standard to the facts in each individual plaintiff's case. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir., 1988). Some of the criteria the court may consider include: the level of plaintiff's disability; the reliability of the vocational expert's testimony; the reliability of the plaintiff's testimony; the distance plaintiff is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. Id. The magistrate judge concludes that a remand is required in this case for a new decision that reflects a basis, under applicable legal standards, for concluding that the job(s) that the ALJ determines the plaintiff retains the ability to perform reflect a "significant" number of jobs in the national economy.

Next, we agree with the plaintiff that the following discrepancy between Finding No. 5 and the controlling vocational hypothetical is troubling in light of the fact that the ALJ's findings as a whole appear to limit him to the job of copy machine operator. Although Finding No. 5 indicates

that the plaintiff must avoid fast-paced and/or quota-based types of jobs, the hypothetical indicates that he should avoid only fast-paced work. This discrepancy is significant because it appears that a copy machine operator would be required to satisfy some quota expectations. Once again, we conclude that, upon remand, the ALJ should make sure that there is a meaningful correspondence in language and terminology among the limitations found by the medical sources, those contemplated by the vocational hypotheticals, and the RFC findings in the written decision.

Next, the plaintiff argues that the VE's identification of the job copy machine operator is inconsistent with information contained in the Dictionary of Occupational Titles (DOT) and its companion publications. The hypothetical to which the VE identified the job of copy machine operator contemplated an individual restricted to "occasional" use of the right hand for reaching, handling, and fingering (AR, p. 100). However, according to the plaintiff, the DOT indicates that the job (DOT No. 207.685-014) requires "frequent" reaching, handling, and fingering. The magistrate judge concludes that the issue is not of case-dispositive significance herein. Upon remand, counsel will be free to cross-examine the VE on any perceived inconsistency between his testimony and the DOT.

The plaintiff's final contention is that the ALJ erred in declining to accept the opinion of her treating physician, Gay Richardson, that she must periodically alternate sitting and standing to relieve pain or discomfort (AR, p. 349). The ALJ declined to accept this opinion because, in her prior statement of limitations given in connection with the prior ALJ's prior hearing decision, Dr. Richardson did not mention anything about a need to alternate sitting and standing and "there is no evidence of a change affecting the claimant's condition which would now necessitate she alternate between sitting and standing throughout the workday" (AR, p. 21). Furthermore,

"[b]y all indication, [the plaintiff's] lumbar condition is at least stable and possibly even improving due to significant weight loss, status-post gastric bypass surgery" (AR, p. 21). The magistrate judge concludes that the issue is not of case-dispositive significance herein. Upon cross-examination, the VE testified that, if the individual also needs to alternate between sitting and standing, she could still perform the jobs of copy machine operator and surveillance system monitor (AR, pp. 102-103).

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision and for presentation of new vocational hypotheticals and testimony consistent with this report and recommendation.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).