UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:08CV183-J

TAWANNA D. MACKINS                                                                          PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                             DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Commissioner's objections to the Magistrate Judge's Report and Recommendation that this case be remanded for a new decision and for presentation of new vocational hypotheticals. The Plaintiff has filed a response, and the matter is now ripe for adjudication. For the reasons that follow, the Court concurs with the Magistrate Judge's analysis, and remands this case for a new decision and presentation of new vocational hypotheticals and testimony.

### BACKGROUND

At the time of her applications for disability insurance and supplemental security income benefits, Claimant Mackins was in her mid-thirties and alleged disability from age 33 as a result of a work-related back injury, bulging disc at L4-L5, and disc rupture (Tr. 169). Her previous work included nurse's aide, cashier, factory glass feeder, factory assembly line worker and sorter (Tr. 177). Following a hearing on November 20, 2006 at which both the claimant and a vocational expert (VE) testified, the ALJ found claimant capable of performing a range of light work activity:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a range of light work activity. The claimant can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently. She can push/pull within these limitations with the upper and lower extremities, but not on a repetitive basis. She can sit, stand and/or walk, about six hours each, as needed in an eight-hour workday. She can occasionally stoop and crouch, but never kneel or crawl. She can only occasionally use her right hand/wrist/upper extremity for reaching, handling, fingering and feeling. She can never be exposed to extreme cold, extreme heat, wetness and/or humidity, vibration, moving/mechanical parts, electrical shock, exposed heights and noxious fumes/odors. Regarding her mental impairment, she can never carry out detailed instructions or make complex decisions. She can no more than occasionally interact with the general public or co-workers. The claimant cannot perform fast-paced/quota-based types of jobs. (Tr. 17)

It is from this unfavorable decision that the claimant appealed. The matter was referred to Magistrate Judge W. David King who filed a Report and Recommendation that the case be remanded.

## **ANALYSIS**

This case was a Step Five denial, and hinges upon the testimony of a VE John Grenfell. At this last step in the sequential evaluation process, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exists in the national economy that the claimant can still perform, Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990). The focus of judicial review in Step Five cases is generally whether the controlling hypothetical posed to the VE reflects all vocationally significant physical and mental limitations actually suffered by the claimant, Varley v. Secretary, 820 F.2d 777 (6th Cir. 1987).

In his decision, the ALJ purports to accept and adopt the opinions of Dr. Sillers and Dr. Hess regarding the claimant's mental limitations. These state agency psychologists found that the claimant has moderate limitations in the following functional areas: 1) ability to maintain attention and concentration for extended periods, 2) interact appropriately with the general public; 3) respond

appropriately to changes in the work setting, and 4) set realistic goals or make plans independently of others. (Tr. 296-297; 344-345) The VE in this case was asked by the ALJ to:

> Consider an individual with the Claimant's vocational profile limited to sedentary and light with no repetitive pushing or pulling in the upper or lower extremities, occasionally stoop and crouch, no kneeling or crawling, occasionally with the right hand reaching, fingering and feeling and handling occasionally, no restrictions with the left hand, no exposure to the weather, extreme heat or cold or wetness and humidity, no vibrating surfaces or objects, no exposure to moving mechanical parts, electrical shock or high places, no noxious fumes and odors, <u>no fast paced work, no sustained, detailed or complex work and could have occasional contact with co-workers and the general public</u>. (Tr. 100, emphasis added.)

Notably lacking from this hypothetical is any accommodation for the moderate limitation in the claimant's ability to maintain attention and concentration as found by the state agency psychologists. In response to the posed hypothetical, the VE identified three jobs which the claimant would still be able to perform: 1) copy machine operator; 2) surveillance system monitor; and 3) order clerk (Tr. 100). In effective cross-examination of the VE, claimant's attorney asked whether these three jobs would remain if the hypothetical included moderate limitations in maintaining attention and concentration for extended periods. The VE's responded that only the copy machine job would remain if those moderate limitations for attention and concentration were included.

The Commissioner has filed objections to the Magistrate Judge's Report and Recommendation, arguing that the ALJ's residual functional capacity (RFC) assessment is consistent with the opinions of the state agency psychologists; 2) even if the Court found that the agency psychologists assessed additional limitations, the copy machine operator position is alone sufficient to constitute a significant number of jobs in the national economy that Plaintiff can perform; and 3) the hypothetical question is consistent with the Plaintiff's RFC. As will be discussed below, the Court is not persuaded by these objections.

3

First, it is clear that both state agency psychologists found moderate limitations in the claimant's ability to maintain attention and concentration. The Commissioner has cited to the POMS and points out that the information contained in Section III of these forms is more detailed than the check-the-box format contained in Section I of the same form. That is readily apparent. However, the mere fact that Section III of one of the forms indicates the Claimant is able to maintain concentration and attention for two hour segments over an eight hour day does not change the fact that these moderate restrictions are not adequately accounted for in the RFC or the ALJ's controlling hypothetical to the VE. The Commissioner insists that this is consistent with a normal work day with normal breaks, and the Court should essentially give the Commissioner the benefit of the doubt. That is, if the VE had been given the more detailed description of claimant's concentration and attention capabilities contained in Section III of the form (i.e. that overall claimant maintains the ability to maintain concentration and attention for two hour segments over an eight hour period), then there would have been no further narrowing of the available jobs identified by the VE.

The ability to maintain attention and concentration is often at issue in social security cases, and generally speaking, VE's commonly testify that two hours of concentration is the bare minimum ability required for competitive unskilled work. We know that claimant's ability in these areas falls somewhere within the Commissioner's definition of "moderate" and that includes the two hour segments identified by Dr. Sillers. We also know that the VE was comfortable eliminating two of the three jobs when posed with the "moderate" limitations question by claimant's counsel. The Court cannot overcome the disparity between the controlling hypothetical and moderate concentration and attention findings.

With regard to the Commissioner's second argument, the Court finds that as the record stands, it is apparent that the VE eliminated claimant from performing all but one of the jobs, that of copy machine operator. This job would constitute 900 such jobs in Kentucky and 60,000 jobs in the nation. The Court is not aware of any controlling authority which finds 900 jobs in the state or 60,000 jobs in the nation to represent a "significant" number of jobs in the national economy. Nor has the Commissioner cited any such authority in its objections. Furthermore, in this age of computers, e-mail, electronic court filing, paperless billing, and other time-saving technology, it is difficult to imagine that there are 900 full-time copy machine attendant jobs in the state economy, or 60,000 in the nation at large. The Court simply cannot find that 60,000 copy machine jobs – if in fact there are that many – constitute a significant number of jobs in the national economy.

## CONCLUSION

For the reasons stated above, the Magistrate Judge's Report and Recommendation is ADOPTED. This case is REMANDED to the Commissioner for a new decision and for presentation of new vocational hypotheticals and testimony consistent with the Magistrate Judge's Report and Recommendation.